1

2

3

4                              UNITED STATES DISTRICT COURT

5                            NORTHERN DISTRICT OF CALIFORNIA

6

7     UNITED STATES OF AMERICA,                    Case No.  14-cv-05383-JST
                    Plaintiff,
8
                                                   **ORDER DENYING MOTION TO**
9            v.                                    **DISMISS AND ORDERING IN**
                                                   **CAMERA REVIEW**
10    ROBERT MCELIGOT,
                    Defendant.                     Re: ECF Nos. 17, 18
11

12          Currently before the Court is the United States' Verified Petition to Enforce Internal

13   Revenue Service Summons ("the petition") against Respondent Robert McEligot.  ECF No. 1.

14   McEligot has filed a motion to dismiss the petition.  ECF No. 17.  The Court held a hearing on the

15   matter on March 12, 2015.  Following the hearing, the Court ordered Respondent to produce for *in*

16   *camera* review the redacted documents for which Respondent had asserted the tax practitioner

17   privilege.

18   **I.     Background**

19          **A.     Procedural History**

20          The IRS issued a summons on McEligot in connection with a civil tax audit of Lawrence

21   Lui for tax years 2005 through 2012, during which period McEligot served as Lui's certified

22   professional accountant.  Although McEligot attended the summons hearing, he stated that he

23   would answer questions only if the IRS permitted Lui's attorneys also to attend the hearing.  ECF

24   No. 21 at 2.  Because the IRS refused to allow Lui's counsel to be present, McEligot refused to

25   testify.  Id.  McEligot provided the IRS with redacted versions of subpoenaed documents.  Id.

26          The United States subsequently brought this petition to enforce the summons.  The Court

27   found that the United States had established a prima facie case under United State v. Powell, 379

28   U.S. 48 (1964), and directed the Respondent to show cause why he should not be compelled to

United States District Court
Northern District of California

1    appear and provide documents and testimony as required by the summons. ECF No. 9. McEligot

2    has filed an opposition to the petition, ECF No. 18, as well as a motion to dismiss the enforcement

3    proceeding as moot. ECF No. 17.

4        Lui filed a motion to intervene before the Court in the summons enforcement proceedings

5    pursuant to 26 U.S.C. § 7609(b)(1), which the government did not oppose. ECF Nos. 11, 14. The

6    Court previously granted Lui's motion for intervention. ECF No. 19.

7        **B.    Jurisdiction**

8        The IRS has authority to examine books and witnesses pursuant to a summons under 26

9    U.S.C. § 7602(a). "If any person is summoned under the internal revenue laws to appear, to

10   testify, or to produce books, papers, records, or other data, the United States district court for the

11   district in which such person resides or is found shall have jurisdiction by appropriate process to

12   compel such attendance, testimony, or production of books, papers, records, or other data." 26

13   U.S.C. § 7604.

14   **II.   Motion to Dismiss**

15       McEligot has filed a motion to dismiss the petition, ECF No. 17, asserting that his only

16   objection to complying with the summons stemmed from the Government's refusal to allow Lui to

17   be present at the IRS proceedings at which McEligot would testify. Therefore, McEligot argues

18   that the petition is now moot, since "Lui's representative has intervened as a party and can be

19   present at the proceedings to assert any privileges when questions are posed and records are

20   produced." Id. at 2. But McEligot's own motion acknowledges the Government's position that

21   Lui's intervention in this District Court enforcement proceeding does not entitle Lui to be present

22   at the summons proceedings before the IRS. Indeed, the Government argues in response to Lui's

23   motion to dismiss that "Liu's [sic] counsel should *not* be allowed to be present during the

24   questioning of a third-party witness, Respondent herein." ECF No. 21 at 5 (emphasis added).

25   Thus, the petition is not moot, and the Court must resolve the question of whether Lui has a right

26   to be present at the IRS proceeding.

27       The Court first observes that the same statute that allows Lui to intervene in this court is

28   silent with regard to his right to intervene before the IRS. 26 U.S.C. § 7609(b) permits certain

individuals identified under Section 7609(a) "the right to intervene in any proceeding with respect to the enforcement of such summons under section 7604." Section 7604, in turn, establishes the jurisdiction of the federal district court to hear summons enforcement proceedings. But nothing in Section 7609(b) provides individuals identified in Section 7609(a) the right to be present during the IRS proceedings at which testimony or documents are produced.

McEligot and Lui also ground Lui's alleged right to intervene in the IRS proceeding on the Supreme Court's decision in Reisman v. Caplin, 375 U.S. 440 (1964), which held that taxpayers have the right to intervene in IRS hearings regarding their tax liabilities. They place particular weight on the following passage from that case:

> This Court has never passed upon the rights of a party summoned to appear before a hearing officer under § 7602. However, the Government concedes that a witness or any interested party may attack the summons *before the hearing officer*. There are cases among the circuits which hold that both parties summoned and those affected by a disclosure may appear or intervene before the District Court and challenge the summons by asserting their constitutional or other claims. *We agree with that view and see no reason why the same rule would not apply before the hearing officer.* Should the challenge to the summons be rejected by the hearing examiner and the witness still refuse to testify or produce, the examiner is given no power to enforce compliance or to impose sanctions for noncompliance.

Id. at 445 (emphasis added) (citations omitted).

Reisman, however, is not the last word the subject. Seven years later, the Supreme Court took up the case of Donaldson v. United States, 400 U.S. 517, 522 (1971), to resolve a split among the circuit courts regarding Reisman. Rejecting the view that Reisman "guarantee[d] intervention for the taxpayer," id. at 529, the Donaldson Court "held that taxpayers could only intervene in a third-party summons case where they could demonstrate a 'significantly protectable interest' barring disclosure, e.g., a legal privilege such as an evidentiary privilege." Ip v. United States, 205 F.3d 1168, 1171-72 (9th Cir. 2000). Donaldson clarified that the language McEligot and Lui now quote from Reisman regarding a taxpayers' ability to intervene before the hearing officer and the Court in order to challenge a summons was "permissive," rather than "mandatory." Donaldson, 400 U.S. at 529. The Court explained that, in Reisman, "the Court recognized that intervention by a taxpayer in an enforcement proceeding might well be allowed when the

circumstances are proper.  But the Court did not there pronounce, even when confronted with a situation concerning an attorney's work product, that the taxpayer possesses an absolute right to intervene in any internal revenue summons proceeding.  The usual process of balancing opposing equities is called for."  Id.

Following the Donaldson decision, "Congress enacted a major overhaul of the Internal Revenue Code in 1976," based in part on the widely-held view that the Donaldson decision had placed "too great a restriction on the procedural rights of taxpayers."  Ip, 205 F.3d at 1172; see also Barnhart v. United Penn Bank, 515 F. Supp. 1198, 1203 (M.D. Pa. 1981) (noting that Section 7609 "resulted from a reaction to several decisions by the United States Supreme Court which granted the IRS broad latitude in the enforcement of administrative summonses.").  "To a large extent, these procedural modifications sprang from a conviction that taxpayers deserved greater safeguards against improper disclosure of records held by third parties."  Ip, 205 F.3d at 1172.  The revisions required "parties to whom the records pertain [to be] advised of the service of a third-party summons, and [to be] afforded a reasonable and speedy means to challenge the summons where appropriate."  Id. (quoting H.R.Rep. No. 94–658, at 307 (1975), reprinted in 1976 U.S.C.C.A.N. 2897, 3203 and S.Rep. No. 94–938, pt. 1, at 368–369 (1976), reprinted in 1976 U.S.C.C.A.N. 3439, 3797–3798.)

Although Donaldson spurred Congressional changes to certain IRS provisions regarding notice of third party summons, no Court has interpreted those changes as reviving Reisman's suggestion – which the Supreme Court disavowed in Donaldson – that taxpayers have a mandatory right to intervene at the summons hearing of a third party.  The Ninth Circuit examined Section 7609 at length in Ip and explained that "[t]he purpose of the notice provision is to allow people to assert defenses, such as the attorney-client privilege or relevancy objections, that would be unavailable to them in the absence of notice."  Id.  Under the statute, however, "a person entitled to notice is allotted no extra protection from the IRS's power to summons; rather, § 7609(b)(2) merely grants standing to the person entitled to notice so that he or she may challenge the summons *in district court*."  Id.  (emphasis added).  Therefore, so long as the taxpayers' ability to challenge the third party summons before the District Court is preserved, nothing in Section

1    7609 gives the taxpayer any absolute right to intervene in the underlying summons proceeding.

2         The Government additionally notes that "[t]he Fourth Circuit, Tenth Circuit, Fifth Circuit,

3    and a District Court within the Ninth Circuit have held that a taxpayer has no right to be present at

4    the interview of the party being summoned." ECF No. 21 at 4.  In United States v. Newman, 441

5    F.2d 165 (5th Cir. 1971) the Fifth Circuit held that a taxpayer could not intervene or be present at

6    the IRS hearing, noting that United States v. Powell, 739 U.S. 48 (1964) had compared such

7    proceedings to grand jury proceedings.  The Newman court noted that the investigatory, non-

8    adversarial nature of the proceedings "would be frustrated by requiring those persons not parties

9    who might be later affected to be allowed to take an active part through private counsel in such

10   proceedings."[1]  Newman, 441 F.2d at 174.  In United States v. Traynor, 611 F.2d 809, 811 (10th

11   Cir. 1979), the Tenth Circuit rejected a taxpayer's argument that she and "her counsel have the

12   right to be present when the respondents produce the requested records, and to actively participate

13   in such proceedings," noting that "[n]o persuasive authority ha[d] been cited in support of this

14   rather novel suggestion."  Similarly, in United States v. Daffin, 653 F.2d 121, 124 (4th Cir. 1981),

15   the Fourth Circuit rejected a taxpayer's argument that he was "entitled to be present and to cross-

16   examine witnesses when questioned by" the IRS agent, noting the Newman and Traynor opinions,

17   as well as what it characterized as the Supreme Court's rejection of similar claims "in the context

18   of other administrative investigatory proceedings" in In re Groban, 352 U.S. 330, 77 (1957).

19   United States v. Daffin, 653 F.2d 121, 124 (4th Cir. 1981).  In United States v. Kershaw, 436 F.

20   Supp. 552 (D. Or. 1977), the District Court for the District of Oregon similarly denied taxpayers'

21   motion to intervene at the interrogation of the accountant who had prepared their tax returns in

22   order to object to questions.  Because the accountant's "able counsel announced that he will not

23   permit his client to testify to any matters covering the attorney-client relationship," the court

24   concluded that the taxpayers' privilege was adequately protected at the hearing.  Id. at 553.

25        Though not insubstantial in number, all of these decisions are thinly reasoned on the

26   question of taxpayer's rights to intervene before at the IRS hearing.  In several of the cases, the

27

28   _____

[1] Newman was decided in 1971, less than three months after the Supreme Court's Donaldson
decision and before the 1976 Congressional reforms spurred by Donaldson.

5

taxpayer neither cited any basis for the right to be present nor described the interest to be protected by her presence. None of the cases perform the "balancing of the equities" required by <u>Reisman</u> (as interpreted by <u>Donaldson</u>), or discuss the revisions to Section 7609 that occurred in the wake of <u>Donaldson</u>. Thus, these cases do not fully acknowledge Congress's demonstrated interest in ensuring that taxpayers be provided with "safeguards against improper disclosure of records held by third parties" in summons proceedings. <u>Ip</u>, 205 F.3d at 1172.

But even disregarding this authority would not permit the Court to find that taxpayers have an absolute right to be present at a third-party IRS summons proceeding. Following <u>Donaldson</u>, Congress gave taxpayers certain other safeguards, but remained silent on the question of whether taxpayers had a right to intervene at the summons proceeding. The enactment of Section 7609(a) provided taxpayers with the right to receive notice of third party summons. 7609(b)(1) permitted a taxpayer to intervene in "any proceeding with respect to the enforcement of such summons" before the District Court in cases where the third party summoned "neglect[ed] or refuse[d] to obey such summons." 26 U.S.C. 7604(b). Section 7609(b)(2) gave taxpayers the ability to challenge a third party summons before the District Court in a proceeding to quash, even in cases where the third party has not neglected or refused to obey the summons. But Congress did not revive <u>Reisman</u>'s suggestion– disavowed by the Supreme Court in <u>Donaldson</u>– that a taxpayer has an absolute right to be present at the underlying summons proceeding before the IRS.

In light of its familiarity with <u>Reisman</u> and <u>Donaldson</u>, Congress was aware that it could provide taxpayers with the ability to be present at the IRS hearing where a third party summons pertaining to their tax liabilities was to be executed. The Court therefore concludes that, as Congress provided certain rights to taxpayers to "safeguard[] against improper disclosure of records held by third parties," <u>Ip</u>, 205 F.3d at 1172, but neglected to provide this right, this omission was intentional. <u>See</u> Antonin Scalia & Brian A. Garner, Reading Law: The Interpretation of Legal Texts 93–100 (2012) (cited in <u>Shea v. Kerry</u>, 961 F. Supp. 2d 17, 29 (D.D.C. 2013)) (explaining canon of construction that "[n]othing is to be added to what the text states or reasonably implies (*casus omissus pro omisso habendus est* ). That is, a matter not covered is to be treated as not covered.")). The application of this canon of construction in this

6

instance is further bolstered by the Supreme Court's repeated admonition that "restrictions upon the IRS's summons power should be avoided absent unambiguous directions from Congress." Tiffany Fine Arts, Inc. v. United States, 469 U.S. 310, 318 (1985) (internal quotations and citations omitted).

Therefore, the Court concludes that a taxpayer does not have an absolute right to be present at a third party IRS summons proceeding concerning the taxpayer's liabilities. In order to determine whether a taxpayer should be permitted to be present at such a hearing, a court must engage in the "[t]he usual process of balancing opposing equities" – the standard identified in Donaldson, 400 U.S. at 529, and left undisturbed by Congress's subsequent revisions to provisions concerning taxpayer's rights regarding third party summons.

Weighing the equities here, the Court finds that they do not tip in favor of permitting the taxpayer to be present at the IRS proceeding in this case. The government has an interest in obtaining information regarding taxpayers' liabilities in an efficient, non-adversarial format through third party summons. The government stated at the hearing that it only intended to question McEligot at the hearing regarding Lui's tax liabilities for the period from January 2005 through December 2012, and would not question McEligot regarding any communications with Lui following the beginning of the audit in 2014. Therefore, the questioning will not implicate attorney-client privilege or work product issues. Furthermore, McEligot has demonstrated that he is willing to preserve Lui's tax practitioner privilege at the IRS hearing by objecting when applicable. This is demonstrated by McEligot's refusal to provide all of the documents requested by the IRS and his objection to answering questions outside the presence of Lui, which necessitated the need for the immediate enforcement petition. As Lui's privilege is already adequately protected, the equities do not weigh in favor of granting him intervention at the IRS proceeding.

Therefore, the Court will not order the IRS to permit Lui to be present at the summons proceeding. And, as the petition to enforce the summons is not moot, the Court will deny McEligot's motion to dismiss.

United States District Court
Northern District of California

### III.  Petition to Enforce IRS Summons

The Court now turns to the question of whether the Respondent has identified any other reason why he "should not be compelled to appear and provide documents and testimony as required by the summons." See ECF No. 9.  Because the government has agreed to limit its inquiry to a period before the IRS audit, the summons does not pose issues of attorney-client privilege or work product protection.  McEligot and Lui nonetheless assert that certain testimony sought and documents summonsed from McEligot are protected by the federal tax practitioner privilege under 26 U.S.C. § 7525.  The government responds that McEligot seeks to assert the privilege in a blanket manner that is insufficient to meet his burden of establishing that the testimony or documents are protected.

McEligot did assert the tax practitioner privilege in a blanket manner at the IRS summons hearing, refusing to provide any testimony if the IRS refused to permit Lui's counsel to be present at that hearing.  Because the Court has concluded that Lui's counsel is not entitled to be present at the hearing, McEligot should assert the federal tax practitioner privilege on a question-by-question basis at any future hearing, to enable judicial review of any privilege claims.

Regarding the documents sought by the government, McEligot asserted the federal tax practitioner privilege more narrowly by producing the documents and redacting those portions he believed to be protected by the privilege.  The government contends that it has only summonsed communications between Lui and McEligot regarding the preparation of Lui's tax returns, which are not protected by the privilege.  McEligot initially provided a "privilege log" alleging that certain documents requested by the IRS contain privileged "tax advice."   ECF No. 18-2.  McEligot has the burden of establishing that the privilege applies.  See United States v. BDO Seidman, 337 F.3d 802, 811 (7th Cir. 2003).  Because the Court could not conclude from the "privilege log" whether the communications in question qualified for the privilege, the Court ordered McEligot to produce the documents alleged to be privileged for *in camera* review by the Court for the purposes of determining whether the privilege does in fact apply.

Having reviewed the documents in camera, the Court observes that all but one are invoices sent to Lui by accountants relating to consultations conducted on his behalf regarding the

1    preparation of tax returns.  The other document is an email to Lui from McEligot with questions

2    seeking additional information regarding the preparation of Lui's 2008 income tax return.

3    　　　"With respect to tax advice, the same common law protections of confidentiality which

4    apply to a communication between a taxpayer and an attorney shall also apply to a communication

5    between a taxpayer and any federally authorized tax practitioner to the extent the communication

6    would be considered a privileged communication if it were between a taxpayer and an attorney."

7    26 U.S.C. § 7525(a)(1).  The Seventh Circuit has held that, because the tax practitioner privilege is

8    modeled on the attorney-client privilege, in order to qualify for protection, "the communication

9    [must] be made . . .  in confidence," and "the confidences [must] constitute information that is not

10   intended to be disclosed by the [tax practitioner]."  BDO Seidman, 337 F.3d at 811.  "Nothing in

11   [Section 7525] suggests that nonlawyer practitioners are entitled to privilege when they are doing

12   other than lawyers' work."  United States v. Frederick, 182 F.3d 496, 502 (7th Cir. 1999).  Most

13   significantly, "the privilege does not protect communications between a tax practitioner and a

14   client simply for the preparation of a tax return."  United States v. KPMG LLP, 237 F. Supp. 2d

15   35, 39 (D.D.C. 2002).

16   　　　Although the Ninth Circuit has not examined a privilege claim under Section 7525, the

17   Ninth Circuit has examined the attorney-client privilege– on which Congress expressly modeled

18   the Section 7525 privilege– in the tax return preparation context.  Ninth Circuit precedent in this

19   realm generally holds that attorney-client communications regarding the preparation of tax returns

20   are not protected.  In United States v. Gurtner, 474 F.2d 297, 299 (9th Cir. 1973), the Ninth Circuit

21   held that a defendant could not claim privilege over "consultations with [his accountant] for the

22   purpose of preparing tax returns."  Although this case predated the enactment of Section 7525, the

23   Ninth Circuit reasoned that "[s]uch consultations, even with an attorney who is preparing the

24   returns, are not privileged."  United States v. Gurtner, 474 F.2d 297, 299 (9th Cir. 1973).

25   　　　More recently, in United States v. Richey, 632 F.3d 559 (9th Cir. 2011), the Ninth Circuit

26   held that an appraiser's assessment of a conservation easement was not privileged, where the

27   summonsed appraiser had been hired by counsel for taxpayers in connection with the preparation

28   of a tax return.  In detailing the scope of the attorney-client privilege in this context, the Court

1    noted that "[i]f the advice sought is not legal advice, but, for example, accounting advice from an

2    accountant, then the privilege does not exist."  Id. at 566.  Because "any communication related to

3    the preparation and drafting of the appraisal for submission to the IRS was not made for the

4    purpose of providing legal advice, but, instead, for the purpose of determining the value of the

5    Easement," the Court concluded that communication concerning the appraisal were not protected

6    by the attorney-client privilege.  Id. at 567.

7            Because Ninth Circuit precedent indicates that attorney-client communications regarding

8    the preparation of tax returns are generally unprotected, the tax practitioner privilege modeled on

9    the attorney-client privilege also likely does not extend to such communications.  This view

10   accords with the out-of-circuit authority holding that tax practitioner privilege does not apply to

11   communications made to assist a taxpayer in the preparation of tax returns.  See, e.g., KPMG LLP,

12   237 F. Supp. 2d at 39.  The Court thus concludes that the privilege does not apply to the redacted

13   portions of the documents submitted.  The Court therefore orders that McEligot comply with the

14   summons and produce unredacted versions of the documents.

**IV.     Conclusion**

16           The Court denies Respondent's motion to dismiss, concluding that Lui's counsel does not

17   have a right to be present at the summons proceeding.  The Court orders McEligot to appear and

18   give testimony before the IRS at a date and time to be set.  Should Respondent wish to assert

19   claims of privilege in response to questioning, Respondent should assert objections on a question-

20   by-question basis, mindful of this Court's discussion of the scope of that privilege– specifically,

21   that the privilege does not extend to communications between Respondent and Lui regarding the

22   preparation of Lui's tax returns.

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

United States District Court
Northern District of California

10

Having concluded that the redacted documents are not protected by the federal tax practitioner privilege, the Court orders Respondent to produce unredacted versions of the documents summonsed to the IRS.

IT IS SO ORDERED.

Dated:  April 6, 2015

_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California

11